UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DAVID LOUIS WHITEHEAD | CIVIL ACTION NO. 25-cv-1236 |
| VERSUS | JUDGE VAN HOOK |
| MARTIN LEMELLE ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

David Louis Whitehead ("Plaintiff"), who is self-represented, has a history of filing frivolous complaints and vexatiously filling the record with multiple meritless motions. He has been sanctioned by this court and the Fifth Circuit, and since 2012 the clerk of court has been ordered to decline any civil complaint submitted by Plaintiff unless it was first presented to a district judge and the judge specifically authorized in writing that the complaint could be filed. Plaintiff commenced this civil action in state court. The defendants removed it based on federal question jurisdiction, so Plaintiff now has a case in this court despite the limitation on him filing new civil actions.

Plaintiff's state court petition asserted breach of contract and other claims related to the termination of his employment as a professor at Grambling State University. The case has been in federal court less than a year, but there are already 155 docket entries for what should be a run-of-the-mill employment case. The court has already ruled on several motions, but there are currently pending more than 20 motions, most of which were filed by Plaintiff.

Plaintiff was warned early in these proceedings that "if he continues to file frivolous, repetitive, or otherwise meritless motions in this case then this civil action may be subject to summary dismissal as a sanction for such abusive litigation." Doc. 33. Plaintiff has nonetheless continued to file such motions. For the reasons that follow, it is recommended that this civil action be dismissed with prejudice as a sanction for vexatious and abusive litigation.

**Litigation History**

Plaintiff's filings in this court began in Whitehead v. Fedex, 10-cv-1120. Plaintiff alleged in that suit, which was removed from a Bossier Parish state court, that he was assaulted by a FedEx employee while he was a customer at a FedEx store in the District of Columbia. He alleged that FedEx destroyed the store's tape of the incident and conspired with its attorneys to deny Plaintiff information about the tape. Judge Foote dismissed the case based on improper venue. Whitehead v. FedEx Office Inc., 2010 WL 4103707 (W.D. La. 2010).

Judge Foote "recognize[d] that Plaintiff has a history of filing frivolous complaints and is in fact enjoined from filing suit in a court of proper venue." She cited a number of published decisions as evidence:

> See Whitehead v. Paramount Pictures Corp., 2009 WL 1491402 (E.D. Va. May 26, 2009) (enjoining Plaintiff from filing any new civil actions in the Eastern District of Virginia without first seeking and obtaining leave of court); Whitehead v. Viacom, 233 F.Supp.2d 715 (D.Md.2002) (finding Plaintiff "is clearly a vexatious litigant" with "blatant disregard for this court and the judicial system as a whole"); Whitehead v. Paramount Pictures Corp., 145 F.Supp.2d 3 (D.D.C. 2001) (ordering Plaintiff seek leave of Court before any filing of his be accepted by the Clerk of Court after finding he "has no regard for our judicial system or the drain on its resources caused by his

actions"); Whitehead v. Wickham, 2005 WL 2874975 (D.C. Super., Sept. 6, 2005) (enjoining Plaintiff from filing any new cases without leave of court after recognizing his "long history of filing vexation, harassing, and duplicative lawsuits in the District and throughout the country."). Plaintiff is cautioned that sanctions may ensue if he files further frivolous pleadings in this action.

Plaintiff's complaints in those earlier cases typically alleged that movie studios or publishers stole his ideas for use in films or publications, or that public officials were engaged in wide ranging conspiracies directed at him. He sought bizarre relief such as an injunction against the confirmation of Justice Sotomayor[1], and he filed almost 100 motions in one case.[2] One judge wrote that Plaintiff's self-proclaimed purpose for bringing multiple copyright lawsuits was to extract nuisance settlements and that Plaintiff intended to continue a barrage of motions and force the defendants to incur substantial legal fees until litigation became so expensive that they would pay him to go away. Whitehead v. Paramount Pictures, 145 F.Supp.2d at 5.

After Judge Foote dismissed Whitehead v. Fedex, Plaintiff filed a barrage of requests to reopen, reconsider, and the like. He requested recusal lists for the district's judges and, after his request was denied, made repeated renewals of the request to the point that he was barred from filing any pleading relating to the court's recusal list. Plaintiff continued to plague the court with frivolous filings even seven years after his case was closed. Judge Foote sanctioned him $100.00 and directed the clerk of court to not accept

[1] Whitehead v. Paramount Pictures, Inc., 366 Fed. Appx. 457 (4th Cir. 2010).

[2] Whitehead, 2009 WL 1491402 at *3.

any new filings from Plaintiff until the sanction was paid. Plaintiff continued his efforts in the Fifth Circuit, where he moved to recuse Judge Edith Jones and asked to bypass the Fifth Circuit and directly petition the Supreme Court. All of his requests were denied, and he eventually voluntarily dismissed his appeal.

While the Whitehead v. Fedex proceedings were ongoing, Plaintiff filed Whitehead v. White & Case, LLP, 12-cv-0399. The 145-page complaint named as defendants approximately 35 judges, a number of attorneys and law firms, the District of Columbia Federal Judicial Nomination Committee, the District of Columbia, the Democratic National Committee, and delegate Eleanor Holmes Norton. Other defendants included Apple Computer, Inc., Microsoft, Inc., officials at Howard and Georgetown universities, Harvard University, City Group, Bank of America, and other financial institutions. Another large group of defendants were from the entertainment industry and included Tom Cruise, Columbia Pictures, Inc., Walt Disney Company, Home Box Office, Mike Myers, Black Entertainment Television, Sean Combs, Tyler Perry, Mel Gibson, and USA Today opinion columnist Dewayne Wickham.

The judges were generally accused of massive, malicious misconduct, usually relating to rulings in prior actions that were dismissed around the country. Plaintiff did not name Judge Foote as a defendant, but he alleged that she was a material witness regarding fraud in his FedEx case. Part of the alleged wrongdoing in Plaintiff's past litigation was attributed to a conspiracy between "unnamed defendant" President Clinton and Hollywood celebrities such as Tom Cruise and David Geffen. The lengthy allegations about the alleged judicial wrongdoing were simply incapable of meaningful summary. Suffice it to

say that they were bordering on unintelligible, and any rational person who read the complaint would immediately come to the conclusion that the writer was either mentally ill or, as suggested in a prior suit, intentionally drafting a complaint that was as vexatious and burdensome as possible in an effort to extract a financial settlement.

Plaintiff alleged that "Unnamed President George W. Bush" retaliated against him for writing his college paper on the Persian Gulf War. Plaintiff also claimed to have penned a play, "The Big Bad Wolf v. Ms. Little Red Riding Hood - The Mike Tyson Story," which somehow led to retaliation by President Bush, who appointed judges and other government officials who rejected Plaintiff's many judicial and administrative complaints. Plaintiff alleged that his play was the basis for the majority of Tyler Perry's successful films, and the "same plot was used for James Cameron's film 'Titanic' characters, with Jack, Rose, Cal, and Rose's Mother, for Mike Tyson, Robin, and her mother."

Plaintiff alleged in paragraph after paragraph that various officials at universities, corporations, and government agencies had various conflicts of interest based on stock holdings, personal relationships, campaign contributions, or the like, all of which somehow violated Plaintiff's civil rights. Many of the allegations went back several years, beyond any possibly applicable statute of limitations. For example, Plaintiff alleged that Howard University retaliated against him in 1990—22 years prior to the suit—because Plaintiff ran against Jessie Jackson for District of Columbia shadow senator. Plaintiff added that the paper he wrote about the Persian Gulf War, while enrolled at Howard, was accessible by Time Warner's Dick Parsons and led to the film *Wag the Dog,* produced by Time Warner subsidiary New Line Cinema. Defendant law firm White & Case was alleged to represent

Time Warner, and the judge who granted summary judgment for Howard University in a lawsuit based on the above-alleged retaliation was said to be "connected to" White & Case. This was just one of the several conclusory assertions of such conspiracies and conflicts of interest that were found throughout the lengthy complaint.

Plaintiff alleged that Mike Myers and other entertainment industry defendants stole his script called "A New World" and used it to create the *Austin Powers* films. Plaintiff made a similar allegation in one of his affidavits that Tom Cruise and other entertainment industry officials infringed on a book he wrote called "Brains, Sex & Racism in the CIA and the Escape" to create the *Mission Impossible* films.

The undersigned reviewed the complaint in Whitehead v. White & Case and determined that it warranted swift dismissal to avoid any further waste of the court's time or the incurring of attorney fees by the many defendants. The allegations were deemed patently frivolous and vexatious. It was noted that Plaintiff had not been deterred by earlier warnings by Judge Foote and other judges against frivolous filings, and he had an incredible track record of filing similar, frivolous actions around the country. It was recommended that the clerk of court be ordered to decline to file any civil complaint submitted by Plaintiff unless the complaint was first presented to a district judge of this court and the judge had specifically authorized in writing that the complaint may be filed. Judge Haik adopted that recommendation and entered judgment in May 2012.

Judge Haik's judgment was entry number 45 on the docket in 12-cv-0399. Plaintiff then began filing various requests to reconsider, request congressional records, compel testimony of a judge, obtain recusal lists, and the like. There were 151 docket entries by

the time it ended with the Fifth Circuit imposing sanctions of $200.00. Along the way, things got so bad that Judge Haik ordered the clerk to not accept any future filings of any kind from Plaintiff without prior judicial approval.

Plaintiff argued in the Fifth Circuit that several judges of that court were disqualified to handle his petition, asked that they order Justice Scalia to issue a statement, and again demanded district court recusal lists. The Fifth Circuit noted that Plaintiff had "inundated this court with multiple motions and filings that are largely incomprehensible or fanciful" and that he had filed more than 20 motions despite warnings of sanctions. The court did ultimately impose a $200 sanction and prohibited Plaintiff from filing any new appeals or actions in the Fifth Circuit pertaining to 12-cv-0399 until the sanction was paid.

Plaintiff returned in Whitehead v. Netflix, 17-cv-0225, when he filed a motion for leave to file an antitrust and fraud case against several defendants based on an allegation that an attorney submitted a 30-film proposal that was declined by entertainment industry defendants. Judge Drell reviewed Plaintiff's litigation history and ordered the complaint stricken. He noted that the complaint appeared to be a duplicate of prior frivolous suits filed in this court and across the country. Multiple additional filings followed, along with another trip to the Fifth Circuit. The appellate court denied a request to compel the Department of Justice to seize copyrighted works, unseal an alleged federal investigation involving over 100 judges relating to the massive theft of Plaintiff's copyrights, denied recusal requests, and rejected other similar demands. That case alone required almost four years of judicial attention.

Plaintiff also filed Whitehead v. Parish of Caddo, 17-cv-0306. Plaintiff alleged in that case that Caddo Parish would not provide him a copy of video footage of an accident that occurred at a library when Plaintiff walked into an object and allegedly strained his neck. Judge Drell denied Plaintiff permission to file the complaint.

Plaintiff next filed Whitehead v. Buttigieg, 22-cv-0385, a case which began in the Southern District of New York and alleged that the Department of Transportation violated the First Amendment, the ADA, and a host of other state and federal laws by disagreeing with an opinion that Plaintiff expressed about the Dred Scott case. The case was transferred to this district, after which Plaintiff filed a notice of voluntary dismissal.

Plaintiff returned in Whitehead v. Grand Canyon University, 24-cv-0423. He asserted claims of race and age discrimination, retaliation, conspiracy, cyber theft, and other claims against Grand Canyon University and an individual who resides in Arizona. The complaint appears to be based on actions allegedly taken while Plaintiff was enrolled in an online class. Judge Doughty reviewed the matter, including Plaintiff's history of sanctions, and dismissed the action for lack of the required advance permission. Plaintiff was also ordered to pay a sanction of $500 for failure to abide by orders of the court. The clerk of court was directed not to accept any new suits from Plaintiff until the sanction was paid in full. Judge Doughty also ordered that the clerk of court "shall accept no further filings of any kind from David Louis Whitehead unless the filings have first been presented to the Chief Judge of this Court and the Chief Judge has specifically authorized in writing that they may be filed." Thus, the preauthorization requirement was extended from new civil actions to filings of any kind.

**This Civil Action**

Plaintiff filed this civil action in state court against Grambling State University and its president, Mr. Martin Lemelle. Plaintiff alleged that the university terminated his employment after the school year that ended in May 2024. Plaintiff alleged that the university did not have any grounds to terminate his employment, but Mr. Lemelle retaliated because Plaintiff had filed a bar complaint against Lemelle's uncle, William Hughey. The complaint invoked state law claims such as breach of contract and unjust enrichment, but it also specifically cited 42 U.S.C. §§ 1981, 1983, 1985, and other federal statutes. The defendants removed the case based on federal question jurisdiction.

Plaintiff first filed motions in an effort to have the case remanded to state court. The court entered an order (Doc. 8) that explained exactly how Plaintiff could achieve that goal by filing an amended complaint that deleted all federal claims and references to federal law. Plaintiff filed an amended complaint (Doc. 24), but he invoked the same federal statutes as well as RICO and the First Amendment. Plaintiff also filed a request for entry of default, a RICO statement, a motion for recusal, a motion for emergency unsealing of grand jury findings, and the like.

The court entered an order (Doc. 33) that addressed some of the motions and noted that this case had found its way to federal court only because it escaped the ban on new filings by arriving here as a removed case. The court stated that the previous ban did not directly affect this case, but given Plaintiff's lengthy history of frivolous lawsuits and motions he was "cautioned that if he continues to file frivolous, repetitive, or otherwise

meritless motions in this case then this civil action may be subject to summary dismissal as a sanction for such abusive litigation."

Plaintiff did not heed that warning. Several motions, including a request for default judgment, were filed and denied. Then, beginning April 15, 2026, which was less than four months before this writing, Plaintiff submitted the following 40 or so filings (typos and misspellings in the original):

Doc. 76: Motion to Modify the Court's Order Relating to Document 72, Associated with Documents 53, 53(1), (2) and (3) and Defendant's Response

Doc. 77: Amended Motion to Modify the Court's Order Requesting Consolidation of Document Number 72 (Second Amended Complaint (B) with Document Number 75 (Exhibits) and Others Related Records, If Necessary

[The defendants filed a Rule 12(b)(6) motion to dismiss based on untimeliness, lack of individual liability under certain statutes, and failure to state a claim on which relief may be granted.]

Doc. 85: Plaintiff's Motion to be Allowed to Respond to Defendant's 12 B (B) Motion to Dismiss, or in the Alternative Filing an Answer to the (Second Amended Complaint (B) with Document Number 75 (Exhibits), Request to File Summary Judgment Should Defendants File an Answer, or in the Alternative Allow Parties to Conduct a Rule 26 (f) Discovery Conference

Doc. 87: Plaintiff's Motion for an Extension of Time to Respond to Defendant's Motion to Dismiss Pursuant to Fed. R. Prov. 12 B (6)

Doc. 88: Plaintiff's Motion for Recusal of Judicial Panel due to Appearance or Actual Conflicts of Interest Relating to Magistrate Judge's Historical "Apple" Financial Interest Tied to William Hughey, Xlibris, Amazon, Google, Lemelle, Grambling State University, and Judge's Prior Office Referral to the FBI for an Investigation Concerning Plaintiff's Civil Action Cases, Including In Re: David Louis <u>Whitehead v. White & Case LLP</u>, et al. 12cv399, Associated with Judge Richard Haik and Magistrate Hornsby, with the Latter Jurist Presiding on this Case.

Doc. 90: Plaintiff's Amended Motion for an Extension of Time of Respond to Defendfant's Motion to Dismiss Pursuant to Fed. R. Prov. 12 B (6)

Doc. 91: Plaintiff's Motion to Strike Defendfant's Motion to Dismiss Pursuant to Fed. R. Prov. 12 B (6), Six Days with no Service of Paper Copy

[The court issued an order (Doc. 94) denying Plaintiff's motion for recusal (Doc. 88).]

Doc. 96: Motion for Reconsideration on Recusal

Doc. 98: Plaintiff's Amended Motion for Consolidation of his Second Amended Complaint (B) DKT. 72 to be Attached with his Exhibits DKT. No. 53, which became DKT. No. 75 Based on Clerk's Office Error and Parties Consent

Doc. 101: Plaintiff's Memorandum in Opposition to Defendant's Rick Gallot, Grambling State University, Martin Lemelle, Board of Trustees and Louisiana U/L System's Motion to Dismiss and Opposition to Defendant's Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's Claims Based on the Following Discussion, Complaint, Affidavit, and Exhibit Attachment of Records

Doc. 102: Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike

Doc. 103: Plaintiff's Motion for an Extension of Time to Serve Lemmy Akoma and David Kaul of Grambling State University

[The court granted Plaintiff's motion for extension of time to serve and gave Plaintiff until July 17, 2026 to serve defendants Akoma and Kaul. Doc. 105.]

Doc. 106: Plaintiff's Motion to Strike Defendant's Reply Memorandum to Plaintiff's Opposition to Defendant's Motion to Dismiss Pursuant to FRCP 12 (B) (6) #83 Citing Misrepresentation and/or Fraud for Failure to Disclose Consent Agreement Pertaining to Plaintiff's Second Amended Complaint DKT. 72 and Exhibit DKT. 75, & Sanctions

Doc. 108: Plaintiff's Motion to Attach Consent Statement to His Motion to Strike Defendant's Reply Memorandum to Plaintiff's Opposition to Defendant's Motion to Dismiss Pursuant to FRCP 12 (B) (6) #83…

Doc. 109: Plaintiff's Motion to Clarify His Amended Motion to Consolidate His Second Amended Complaint (B) DKT. No. 72 with His Exhibits DKT. No. 75.

Doc. 110: Motion for Extraordinary Leave to Amend Third Amended Complaint Pursuant to Rule 15 (A), 15 A (2) and Rules 16 (Good Cause) and 16 (B)

Doc. 111: Emergency Motion to Replace Page Numbers 2 Through 11 of the Third Amended Complaint as a Correction

Doc. 113: Motion to Strike Defendant's Reply

Doc. 114: Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike Defendant's Reply Memorandum No. 104, with Separate Motion to Strike

Doc. 115: Plaintiff's Amended Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike Defendant's Reply Memorandum No. 104, with Separate Motion to Strike

Doc. 117: Plaintiff's Amended Motion to Allow DKT. No. 75 (Exhibits) be Attached to Second Amended Complaint (B) Document Number 72 Consented by the Parties and Request an Immediate Ruling

Doc. 118: Motion for Default Judgment (Rule 55 - Default Judgment) Against Defendants Grambling State University, Rick Gallot, Martin Lemelle, Louisiana State University System, Board of Trustees Failure to File an Answer to Amended Complaints

Doc. 120: Plaintiff's Second Amended Motion to Consolidate his Amended Complaint DKT. No. 72 with his Exhibits DKT. No. 75

Doc. 121: Plaintiff's Motion to Consolidate his Various Motions to Strike Defendants Pleadings and Request for Sanctions for Defendants' Misrepresentation

Doc. 123: Motion to Disqualify the Office of Attorney General of Louisiana in the Above Captioned Case Based on Legal Conflicts of Interest or Appearance of a Conflict of Interest Associated with Grambling State University, Martin Lemelle, William Hughey and Amazon Contracts Tied to University Louisiana System and Defendant Rick Gallot and Others

Doc. 125: Plaintiff's Motion for Adversary Misconduct – Undue Influence Pursuant to Rule 60 b (3) Involving Defendant's Activities in Shreveport, Louisiana Attempting to Influence the Court in Their Favor, Requesting the Court to Enter Undue Influence Order Striking Defendant's Motion to Dismiss as a Sanction

Doc. 127: Plaintiff's Motion for Added Time to Serve Defendants Akoma and Kaul, Requesting 7 Days from July 17, 2026, to Allow Process Server to Serve Adverse Parties

Doc. 128: Plaintiff's Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike Defendant's Reply Memorandum

Doc. 129: Plaintiff's Amended Motion for Adversary Misconduct – Undue Influence Pursuant to Rule 60 b (3) Involving Defendant's Activities in Shreveport, Louisiana Attempting to Influence the Court in Their Favor, Requesting the Court to Enter Undue Influence Order Striking Defendant's Motion to Dismiss as a Sanction

Doc. 131: Plaintiff's Second Amended Motion for Adversary Misconduct – Undue Influence Pursuant to Rule 60 b (3) Involving Defendant's Activities in Shreveport, Louisiana Attempting to Influence the Court in Their Favor, Requesting the Court to Enter Undue Influence Order Striking Defendant's Motion to Dismiss as a Sanction

Doc. 136: Motion for Temporary Retraining Order Requesting Backpay and Reinstatement Concerning Unlawful Termination of Employee with Disability and Retaliation in Violation of Louisiana Whistle Blower Act

Doc. 137: Motion for Injunctive Relief Requesting Backpay and Reinstatement

[Plaintiff filed proof of service on defendants Akoma and Kaul. Doc. 133.]

Doc. 138: Plaintiff's Amended Execution of Service on Defendants Lemmy Akoma and David Kaul Conducted by process Service in Baton Rouge, Louisiana, Service Performed on or about July 16, 2026, Filed with the Court on July 17, 2026. See Attached Records.

Doc. 139: Plaintiff's Reply to Defendant's Memorandum in Opposition to Plaintiff Motion to Disqualify the Office of the Attorney General of Louisiana (RD #123)

Doc. 141: Plaintiff's Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion for Adversary Conduct

[Defendants Kaul and Akoma filed a Motion for Leave to File Excess Pages in their Memorandum in Support of Motion to Dismiss. Doc. 142.]

Doc. 144: Plaintiff's Objection to Defendants Request for Leave to File Memorandum to Motion to Dismiss

Doc. 145: Plaintiff's Motion for an Extension of Time to Respond to Defendant's Third Motion to Dismiss in Reference to Defendants Akoma and Kaul Et Al

[The court granted Kaul and Akoma's motion for leave to file excess pages (Doc. 146), and Kaul and Akoma filed their Motion to Dismiss for Failure to State a Claim (Doc. 147).]

Doc. 150: Plaintiff's Amended Objection to Defendant's Motion to File a Memorandum Motion to Dismiss and Request for Judgment

Doc. 151: Plaintiff's Motion to Strike Defendants Motion to File a Memorandum Motion to Dismiss and Deny Defendant's Request for Judgment Due to Undue Influence, Fraud, Misconduct and Conflicts of Interest, Requesting Sanctions Denying Defendants Motion to Dismiss

Doc. 153: Plaintiff's Amended Motion for an Extension of Time to Respond to Defendant's Motion to Dismiss and Judgment in Reference to Defendants Akoma and Kaul Et Al

Doc. 154: Plaintiff's Affidavit Supporting his Motion for Leave to Amend Complaint and Disqualification Pursuant to Fed. R. Civ. Proc. 28 U.S.C. Section B (4) (Apple and Comcast) and Financial Interest-Dealings with Department of Education (Student Loan)[3]

---

3 This filing included a copy of the undersigned's financial disclosures. Plaintiff points to a student loan with the Department of Education and ownership of Apple stock. He contends that recusal is required because the DOE and Apple have a relationship with Grambling or other persons who Plaintiff has targeted in this case or others.

**Analysis**

A district court has inherent authority to dismiss a civil action with prejudice if a litigant has acted in bad faith or willfully abused the judicial process. Ben E. Keith Co. v. Dining All., Inc., 80 F.4th 695, 702 (5th Cir. 2023). Such a sanction does not require a showing that the opposing litigant was prejudiced because the court invokes its inherent power to vindicate its own interest, not the interest of the opposing litigant. Id. at 701. In addition to finding that the litigant acted in bad faith or willfully abused the judicial process, the court must find that lesser sanctions would not serve the best interest of justice. Id. at 702.

The facts set forth above are more than sufficient to demonstrate that Plaintiff has acted in bad faith or willfully abused the judicial process. He has filed multiple motions that can be attributed only to bad faith or some form of lack of self-control. Multiple judges of this court and the Fifth Circuit have warned Plaintiff about such filings, they have sanctioned Plaintiff for such filings, and this court specifically warned Plaintiff in this case that he risked dismissal of this civil action if he continued to file frivolous, repetitive, or otherwise meritless motions. He has nonetheless continued to do so, and there is zero chance that any sanction other than dismissal would end this madness.

Every filing by Plaintiff requires the time and attention of multiple persons. The judges, the clerk of court employees, and other court staff have already spent numerous hours in connection with Plaintiff's several filings in this case. This should be a fairly straightforward employment case that would not stand out from any of the several others before the court. But Plaintiff's lengthy, repetitive, and confusing filings make it by far

the most ridiculously complicated such case. His submissions have consumed far too many resources of the court, not to mention the time required of the defense attorneys who are also government employees who have important and meritorious cases to address. Plaintiff's filings have consumed far more than his share of the resources of the court and the community, and he has delayed justice for citizens who have legitimate business before the court. A sanction of dismissal with prejudice of all claims asserted in this civil action is well warranted and is the only way to bring an end to this proceeding without further waste and abuse of judicial resources.

Accordingly,

It is recommended that all of Plaintiff's claims asserted in this civil action against all named defendants be dismissed with prejudice as a sanction based on the inherent power of the court.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar

that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 12th day of August, 2026.

Mark L. Hornsby
U.S. Magistrate Judge